ALDRIDGE
vs.
BIRNEY &c.

Petition for re-hearing.

---

## *Dunn's heirs vs. Pigman's heirs.*

Appeal from the Fayette Circuit; JESSE BLEDSOE, Judge.

*Fraud. Specific performance.*

Judge OWSLEY delivered the Opinion of the Court.

To obtain the legal title to a tract of land, of which they were possessed, and for which judgment in an action of ejectment had been recovered against them, the heirs of Dunn exhibited their bill in equity, with injunction, against the ancestor of the defendant in error, in his life time, and others. The ancestor died pending the suit, and it was revived in the name of his heirs at law, who are the defendants in error.

The legal title to the land is admitted, by both parties, to have been granted by the commonwealth of Virginia to Jesse Pigman, who afterwards conveyed the same to his son, from whom the defendants in error received the title by descent, as his heirs at law, and under the title so derived, the judgment at law was recovered in the action of ejectment.

CHANCERY.

Case 72.

June 13.

Legal title of the land.

DUNN's heirs
vs.
PIGMAN'sh's.
_____

Grounds of
the claim of
the heirs of
Dunn.

Answers.

Decree dismissing the
bill, without
prejudice at
law.

Claim, on the
ground of the
purchasers at
sheriff's sale,
denounced
for their
fraud.

The heirs of Dunn claim the equitable right to the land: First, under two sales which they allege to have been made by a sheriff for different parts of the land, one of which, they charge, was made under an execution that issued on a judgment, recovered at law, by a certain Joseph Boswell, against the heirs of the son of Jesse Pigman, to whom he had conveyed the land; and the other under a decree pronounced in favor of the ancester of the complainants, against the same heirs

Secondly, under a bond which was given by Jesse Pigman to John Lucas, dated the 25th of April, 1787, for five hundred acres of land, and by various successive assignments, was ultimately transferred to their ancestor, James Dunn, in his lifetime.

The equity claimed by the complainants, is contested by the defendants in error, and proof required of every fact necessary to authorize a decree for relief.

On hearing, the bill was dismissed, without prejudice to the right of the complainant to sue at law, upon the bond which was given by Jesse Pigman to Lucas, for the five hundred acres of land.

With respect to the equity first claimed by the complainants, there is evidently no pretext for the relief prayed in their bill. Without entering upon a particular examination of the evidence which has a bearing on the sheriff's sales, through which the complainants claim the land, it is sufficient to remark, that instead of establishing any right under either sale, the evidence goes abundantly to shew, that in justice, nothing was due from the ancestor of the heirs against whom the judgment and decree were recovered, either to Boswell, in whose name the action at law was prosecuted, for the benefit of the ancestor of the complainants, or to Dunn, the ancestor in whose name the decree was rendered; and that, in his attempt, through the instrumentality of the court and its officer, to deprive the infant heirs of Pigman of their inheritance, the conduct of the ancestor of the complainants deserves the most pointed animadversion and reprobation of the chancellor.

Nor are we of opinion, that the claim secondly set up through the bond given by John Pigman to Lucas, deserves, under all the circumstances with which it is connected, a more favorable consideration for the complainants. The attempt to recover the land under sales so unjust and iniquitous as those made by the sheriff are proved to be, though not in itself conclusive against the right of the complainants to relief under the claim secondly set up and relied on by them, is in no slight degree calculated to excite suspicions against the justice and obligatory force of the bond of Pigman to Lucas, through which that claim is made; and instead of being dissipated by any thing else in the cause, those suspicions deserve additional strength and confirmation from the depositions and exhibits contained in the record.

For the bond not only purports to have been executed upwards of thirty years before the commencement of this suit, but it is proved not to have been assigned by Craig, to whom Lucas, the obligee, had transferred it, until after he had failed to succeed in a suit which he brought against Pigman upon it, and the assignment which was then made by Craig to Barkley, who afterwards assigned it to the ancestor of the complainants, is proved to have been made without the payment of any thing by Barkley; and although it is proved that something like two hundred dollars was advanced by Dunn, the ancestor of the complainants, for the bond, it is distinctly shown in evidence, that after he had received the assignment, Dunn acknowledged that he had obtained the bond for the benefit of the heirs of Pigman.

Under these circumstances, we have no hesitation in saying, that the complainants have no cause to complain of the decree which refused a specific execution of the bond, and left them at liberty to sue at law thereon.

The decree is affirmed, with cost.

*Wickliffe* for appellants; *Haggin, Chinn,* and *Crittenden* for appellees.

DUNN's heirs
vs.
PIGMAN's h's.

Influence of the fraud manifest in one ground of complainants claim, upon his other grounds.

Stale and suspicious claim asserted in equity: complainant sent to law.

Decree affirmed.